UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS J. BALANDRAN, | ) | Case No. CV 06-6797-OP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

The Court[2] now rules as follows with respect to the three disputed issues listed in the Joint Stipulation ("JS").[3]

---

[1] Michael J. Astrue, who was sworn in as the Commissioner of the Social Security Administration on February 12, 2007, is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the opinion of Plaintiff's treating physician;
2. Whether the ALJ properly considered the State agency findings; and
3. Whether the ALJ should have obtained Vocational Expert ("VE") testimony.

(JS at 2-3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.

# DISCUSSION

## A. The ALJ Properly Considered the Treating Physician's Opinion.

Plaintiff contends the ALJ failed to properly consider the opinions of treating physician, Dr. Mahinda Jayaratna, who completed a Mental Disorder Questionnaire Form on November 23, 2004. (JS at 3.) In that form, Dr. Jayaratna indicated that Plaintiff had poor concentration and memory, his girl friend had to give him his medication, he appeared to be of borderline range of intelligence, and he "keeps his hygiene and grooming at an [sic] below average range which can be improved." (JS at 3 (citing Administrative Record ("AR") at 533-36).) Dr. Jayaratna also diagnosed Plaintiff as chronic paranoid schizophrenic with poly-substance abuse history and antisocial personality disorder. (AR at 536.)

Plaintiff contends that the ALJ i) misstated Dr. Jayaratna's findings regarding Plaintiff's hygiene and grooming when he stated that Plaintiff had "no reported difficulty" with regard to grooming and hygiene; ii) failed to discuss Dr. Jayaratna's comments regarding Plaintiff's borderline intellectual functioning, poor concentration and memory; and iii) failed to discuss the diagnoses of chronic paranoid schizophrenia and anti-social personality disorder. Plaintiff also complains that the ALJ failed to indicate whether he "accepts or rejects the contents of the questionnaire." (JS at 3-4.)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's

opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). Contrary opinions of examining and non-examining physicians "serve as additional specific and legitimate reasons" for rejecting the opinions of treating and examining physicians. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Johnson v. Shalala, 60 F.3d 1428, 1423, 1433 (9th Cir. 1995) (self-contradictory nature of treating physician opinion was "clear and convincing" reason for rejection).

     Defendant argues that the ALJ provided a specific and legitimate reason for giving less weight to Dr. Jayaratna's report. (JS at 5.) The Court agrees. The ALJ specifically noted that Plaintiff's treating and examining physicians, including Dr. Jayaratna, failed to consider Plaintiff's polysubstance abuse and alcoholism as factors in producing his mental symptoms. (AR at 23.) In contrast, the consultative examiner, Dr. Woodard, concluded that Plaintiff had slight to moderate limitations in his ability to interact with the public and for performing detailed, complex tasks. (AR at 21). He found Plaintiff only slightly impaired in his ability to interact with supervisors and coworkers, maintain concentration, withstand the pressures of a normal work week, and withstand normal stresses and pressures in the workplace. (Id.) Dr. Woodard found no limitation in Plaintiff's ability to perform simple, repetitive tasks, or to work on a continuous basis without special supervision. (Id.) He also concluded that Plaintiff's prognosis for improvement in his psychiatric status was "fair with abstinence from illegal drugs and with appropriate treatment." (Id.)

1    The consultative psychologist, Dr. Goldman, observed that Plaintiff
2 followed instructions without the need for clarification or repetition, and opined
3 that he did not make any effort on the tests she was administering. (Id. at 22.) She
4 also noted that he presented himself "with a severely deficient fund of
5 information," claiming not to know how many legs a dog has, how to count from
6 one to ten, the current date or day of the week, or his birth date. (Id.) Dr. Goldman
7 concluded Plaintiff was clearly malingering. (Id.)
8    Also, after reviewing all of the medical records, the medical expert, Dr.
9 Griffin, concluded that there was no evidence in the record to support the diagnosis
10 of a personality disorder, including schizoid or antisocial personality disorders.
11 (Id.) Dr. Griffin concluded that any evidence of personality disorder was the result
12 of substance abuse or "simply adult anti-social conduct." (Id.) He noted the
13 numerous inconsistencies in Plaintiff's self-reported periods of sobriety and the
14 medical records themselves, and concluded that Plaintiff had no more than slight
15 limitations in any area of work functioning without consideration of drug and/or
16 alcohol abuse. (Id. at 22-23.)
17    Notwithstanding Plaintiff's contention to the contrary, the ALJ accepted Dr.
18 Jayaratna's determination that Plaintiff's intellectual functioning was probably at
19 the borderline level. (AR at 24.) Moreover, the ALJ's comment regarding
20 Plaintiff's lack of reported difficulty with grooming and hygiene is not inconsistent
21 with Dr. Jayaratna's opinion that although Plaintiff's grooming and hygiene were
22 below average, they could be improved. Based on substantial evidence of record,
23 the ALJ concluded that Plaintiff's mental symptoms, including borderline
24 intellectual functioning, were largely the result of his continuing drug and alcohol
25 abuse.[4] (AR at 14, 19.)

26

27    [4] Although Plaintiff claimed he did not drink any more and had not used
28 alcohol for three years (AR at 549), the ALJ noted that there was a "strong scent of

5

1 Accordingly, the Court finds, that the ALJ provided a specific and legitimate
2 reason for giving less weight to some of Dr. Jayaratna's findings.

**B.     The ALJ Properly Considered the State Agency Findings.**

On October 3, 2000, Dr. Brian Taylor, a psychiatric consultant, reviewed Plaintiff's matter. Dr. Taylor completed a Mental Residual Functional Capacity ("MRFC") assessment (AR at 367-69), and a Psychiatric Review Technique ("PRT") form. (AR at 371-84.) Plaintiff contends that the ALJ referenced the PRT form but improperly failed to discuss the contents of the MRFC assessment and failed to provide specific and legitimate reasons as to why he accepted or rejected its content. (JS at 8-9.)

Plaintiff claims this alleged failure is "unfortunate" because Dr. Taylor rated Plaintiff between "Moderately Limited" and "Markedly Limited" in the ability to understand and remember detailed instructions, and to carry out detailed instructions. (AR at 367.) He also found Plaintiff between "Not Significantly Limited" and "Moderately Limited" in ability to work in coordination with or in proximity to others without being distracted by them, the ability to interact appropriately with the public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers without distracting them, and to maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (AR at 367-68.) Dr. Taylor also noted that Plaintiff could be expected to be able to perform a simple job with adequate supervision in a supportive environment. (Id. at 369.) Plaintiff contends these findings, if considered by the ALJ, would have an impact on Plaintiff's capacity to sustain regular full-time employment. (JS at 9.)

As previously discussed, numerous examining physicians found that Plaintiff's mental status likely was related to his polysubstance abuse and

---

alcohol" when he walked into the hearing room. (Id. at 570.)

alcoholism and also reflected malingering. (Se, e.g., AR at 405-10, 537-43.) In fact, one examiner even noted that it was not possible to obtain an accurate assessment of Plaintiff's mental functioning due to his malingering. (AR at 22, 539, 540, 543.) Consequently, as discussed above, the ALJ provided a specific and legitimate reason for discounting the reports of Drs. Jayaratna and Taylor because they failed to consider Plaintiff's polysubstance abuse and alcoholism as factors in producing some of his mental symptoms. (AR at 23.) Thus, the Court agrees with Defendant that the ALJ did not necessarily reject the evidence from Dr. Taylor, but instead concluded, based on the reasoned opinions of the consultative examining physicians Drs. Woodard and Goldman, and medical expert, Dr. Griffin, that Plaintiff's mental impairments (which even Dr. Taylor found to be only mild to moderate at best) were secondary to his polysubstance abuse and would improve if he abstained from alcohol and drug use. (AR at 21.)

Accordingly, there was no error in the ALJ's failure to discuss Dr. Taylor's MRFC assessment. Even if there was error, it was harmless,[5] because other substantial record evidence supported the ALJ's determination. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (ALJ's error irrelevant if other reliable evidence supports ALJ's decision).

**C.     The ALJ Did Not Err with Respect to Using the Grids.**

Plaintiff claims that because he "has significant non-exertional mental impairments, including borderline intellectual functioning as acknowledged by the ALJ," the ALJ erred by relying solely on the grids to determine whether Plaintiff was not disabled.

Where a plaintiff's non-exertional limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a VE is

---

[5] See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

required to identify specific jobs within the plaintiff's abilities. <u>Polny v. Bowen</u>, 864 F.2d 661, 663-64 (9th Cir. 1988); <u>see also</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 (9th Cir. 1989); <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988). However, "[t]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids." <u>Desrosiers</u>, 846 F.2d at 577.

Here, as discussed above, although the ALJ found Plaintiff's polysubstance abuse in questionable remission, alcohol dependence, and probable borderline intellectual functioning to be severe, he properly determined, based on substantial record evidence, that without consideration of drug and/or alcohol dependence,[6] Plaintiff has "no non-exertional limitations when taking prescribed medications." (AR at 26.)

Because the ALJ's determination was adequately supported in the record, the ALJ properly applied the grids to direct a finding that Plaintiff was not disabled.

## IV.
## **ORDER**

---

[6] The Ninth Circuit held in <u>Bustamante v. Massanari</u>, 262 F.3d 949 (9th Cir. 2001), that the five-step sequential evaluation must first be conducted "without separating out the impact of alcoholism or drug addiction." <u>Bustamante</u>, 262 F.3d at 955. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If, however, after conducting this inquiry, the ALJ concludes that an individual is disabled and there is medical evidence of his drug addiction or alcoholism, then it must be determined whether the claimant would still be found disabled if he stopped using alcohol or drugs. <u>Id.</u> (citing 20 C.F.R. §§ 404.1535, 416.935). At this stage, the claimant would bear the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. <u>Ball v. Massanari</u>, 254 F.3d 817, 822-23 (9th Cir. 2001); <u>see also</u> <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1245 (9th Cir. 1998) (remanding to give claimant an opportunity to present evidence relevant to this issue).

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: March 20, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge